**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TANYA BROWN<br><br>         *Plaintiff,*<br><br>   v.<br><br>COMMUNITY COLLEGE OF<br>PHILADELPHIA,<br><br>        *Defendant.* | CIVIL ACTION<br>NO. 24–615 |

**Pappert, J.**                                                          **July 29, 2024**

### MEMORANDUM

Tanya Brown sued her former employer, the Community College of Philadelphia, alleging various violations under the Americans with Disabilities Act and the Pennsylvania Human Relations Act. The College moves to dismiss Brown's claims for disparate treatment under both the ADA and PHRA, arguing Brown failed to administratively exhaust her remedies before filing suit. The Court grants the Motion but allows Brown to amend her complaint.

I

A

Brown started working as a counselor at the Community College of Philadelphia in 2009. (Compl. ¶ 1, ECF No. 1). She suffers from a traumatic brain injury and, in October 2021, requested a 100-percent work-from-home accommodation. (*Id.* at ¶ 9). The College initially allowed Brown to work entirely remotely but, in November 2021, required her to work on campus some of the time. (*Id.* at ¶ 10).

In 2022, Brown's doctor advised her against working on campus due to her health condition. (*Id.* at ¶ 12). Brown had a colleague with a disability who was allowed to work from home. (*Id.* at ¶ 11).

In April 2023, Brown met with the College's staff to discuss her accommodation; the College offered her two remote-work days per week, but that proposal was unsatisfactory to Brown. (*Id.* at ¶ 13). After not working for two months, the College required Brown work on campus for 3.5 hours each morning, Monday through Friday. (*Id.* at ¶ 14). At some point after the April 2023 meeting, Brown was forced to quit. (*Id.* at ¶¶ 14, 34). Brown suffered economic loss and emotional distress because of the College's actions. (*Id.* at ¶ 15).

## B

Meanwhile, on January 17, 2023, Brown filed an administrative charge with the Equal Employment Opportunity Commission claiming, *inter alia*, that the College (1) failed to accommodate her disabilities and (2) retaliated against her for requesting accommodations. (EEOC Charge, ECF No. 16-1).

On January 18, 2024, Brown received a right-to-sue letter from the Pennsylvania Human Relations Commission.[1] (PHRC Right to Sue Letter, ECF No. 1-3). Brown then sued the College under the Americans with Disabilities Act for failure to accommodate (Count I), disparate treatment (Count II) and retaliation (Count III), and under the Pennsylvania Human Relations Act for failure to accommodate (Count IV) and

---

[1] Brown filed an administrative charge with the EEOC but then cross-filed it with the PHRC. *See Colbert v. Mercy Behavioral Health*, 845 F. Supp. 2d 633, 638 (W.D. Pa. 2012) ("Under Pennsylvania law, a charge of discrimination that has been forwarded by the EEOC to the PHRC pursuant to the work-share agreement has been deemed sufficient to satisfy the complaint requirements of the PHRA") (citing *Lantz v. Hosp. of Univ. of Pa.*, No. 96-cv-2671, 1996 WL 442796, *3 (E.D. Pa. July 30, 1996)).

disparate treatment (Count V).  The College moves to dismiss both disparate treatment claims (Counts II and V).

## II

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Though this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Step one is to "take note of the elements the plaintiff must plead to state a claim."  *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675).  Next, the Court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, for all "well-pleaded factual allegations, the court should assume their veracity," draw all reasonable inferences from them "and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 679).  If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint.  *Twombly*, 550 U.S. at 570.

Additionally, courts may consider EEOC and PHRC filings and certain related documents at the motion to dismiss stage. *See Rogan v. Giant Eagle, Inc.*, 113 F. Supp.

2d 777, 782 (W.D. Pa. 2000) ("we may consider the EEOC charge and related EEOC documents . . . either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one [for] summary judgement").

III

A

A plaintiff "must exhaust all administrative remedies before bringing a claim for judicial relief." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)). A claim has been administratively exhausted when the specifics of a charge with the administrative agency "fairly encompass a claim" and would put the agency and defendant employer "on notice" of that claim. *See Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). The administrative exhaustion requirement, however, "is tempered by a fairly liberal construction given to EEOC charges." *Schouten v. CSX Transp., Inc.*, 58 F. Supp 2d 614, 616 (E.D. Pa. 1999). Thus, "if the allegations made in the complaint filed . . . could be 'reasonably expected to grow out of' those contained . . . in the EEOC charge, the pleading of the plaintiff will withstand a motion to dismiss as the administrative remedies available to plaintiff will have been exhausted.'" *Schouten*, 58 F. Supp. 2d at 616 (quoting *Page v. ECC Mgmt. Servs.*, No. 97-2654, 1997 U.S. Dist. LEXIS 19547, 1997 WL 762789, at *3 (E.D. Pa. Dec. 8, 1997)).

B

1

To state a claim for disparate treatment under the ADA, Brown must allege she is: (1) disabled within the meaning of the ADA; (2) qualified to perform the essential functions of her job, with or without reasonable accommodations, and (3) suffered an adverse employment action because of her disability. *Lassiter v. Children's Hospital of Philadelphia*, 131 F. Supp. 3d 331, 351-52 (E.D. Pa. 2015) (quoting *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). Analysis of ADA discrimination claims applies equally to PHRA discrimination claims. *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir.1996).

Brown alleges that she was "constructively discharged" by the College. (Compl. ¶ 14.) In her ADA discrimination claim (Count II), Brown alleges that the "adverse employment action" taken against her was the College "forcing [her] termination." (*Id.* ¶ 34.) In her PHRA discrimination claim (Count V), Brown conclusorily states the College took an "adverse employment action" against her "due to her health condition." (*Id.* at ¶ 59.)

2

Brown's administrative charge was filed on January 17, 2023. (EEOC Charge, ECF No. 16-1.) In April 2023, Brown met with the College about her accommodations, *see* (Compl. ¶ 13), indicating she was still employed by the College at that time. Brown contends that her disparate treatment claims—which are predicated on her termination—are within the scope of her January 2023 administrative charge. (Resp. in Opp. to Mot. to Dismiss, p. 5, ECF No. 13). But since Brown filed her administrative

charge before being terminated, the College could not have expected such a disparate treatment claim to arise from it.  Accordingly, Brown has not exhausted her administrative remedies for Counts II and V.

## IV

A court should grant a plaintiff leave to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile*." Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).  Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted."  *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).  The decision of whether to grant or deny leave to amend is within the sound discretion of the district court.  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (citations omitted).

Granting leave to amend would not cause undue delay or prejudice.  The Court cannot say at this point that amendment would be futile.  Although Brown cannot point to her termination as the "adverse action" in her disparate treatment claim since it had not occurred as of January 2023, she may be able to plead different factual allegations—consistent with those in her underlying administrative charge—that fairly encompass a disparate treatment claim.[2]

---

[2]    The College argues that amendment would be futile because Brown's administrative charge "does not include any allegation regarding constructive discharge (nor could it have given the timing)" and no amendment would remedy that deficiency.  (Repl. to Resp. to Mot. to Dismiss, p. 3, ECF No. 16).

But alleging an adverse employment action—as is required under the ADA and PHRA, *see supra* Section III.B—is not synonymous with alleging "constructive discharge" as the College

An appropriate Order follows.

BY THE COURT:

**/s/ Gerald J. Pappert**

Gerald J. Pappert, J

---

suggests. *Compare Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) ("We have described an adverse employment action 'as an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'") (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)); *with Green v. Brennan*, 578 U.S. 547, 572 (2016 ) ("The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that [her] 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'") (quoting *Pennsylvania State Police v. Suders*, 542 U. S. 129, 141 (2004)).